[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in this action, Claudia Norton Lamoureux, is the mother and custodial parent of the minor child Eric C. Norton. Eric's date of birth is February 13, 1995.
The intervening party, Maxine Ross, is the child's paternal grandmother. CT Page 16504
On September 6, 2001 Ms. Ross filed a motion for contempt against the plaintiff. In her motion, the intervener alleged that the mother violated a court order which awarded the paternal grandmother monthly visitation with the minor child.
On October 5, 2001, the plaintiff filed a motion for modification of visitation. In it, she alleged that visits by the paternal grandmother were no longer in Eric's best interests.
The court heard both motions simultaneously during a contested hearing which was held on November 14, 2001 and December 6, 2001. Both parties were represented by counsel and testified at hearing. The court has carefully considered all of the evidence introduced at hearing, and finds that the facts recounted below were proven by a preponderance of the evidence.
 FACTUAL FINDINGS
The intervener is the mother of the late Enoch A. Norton. Mr. Norton was the plaintiff's ex-husband and the defendant in this action.
The marriage of the plaintiff and the defendant was dissolved by a judgment of this court (Brennan, JTR) on December 5, 1997. Pursuant to an order of the court on October 15, 1997, Ms. Ross had been granted intervener status in this matter. (See court record no. 102).
The dissolution judgement awarded sole custody of Eric to the plaintiff. The decree also ordered:
 "The defendant husband and paternal grandmother shall have one (1) eight-hour visit with Eric C. Norton per month (i.e., one (1) day per month shared by each). The grandmother shall supervise the defendant husband's visit with the child." (See judgment, page 2).
The parties' marriage had been a turbulent one. The plaintiff testified credibly at this hearing that the defendant had been physically abusive to her during their relationship. The acts of domestic violence apparently contributed to the provision in the judgment that the father's visitation with Eric would be supervised by the paternal grandmother.
Between the date of dissolution and August 1998, the intervener visited with the minor child approximately five times.
The paternal grandmother stopped visiting Eric near the end of 1998. CT Page 16505
The intervener claimed at hearing that she stopped seeing her grandson because she was battling cancer and caring for her elderly mother. She also asserted that she ceased contact with Eric because of the hostility and opposition directed toward her by the plaintiff, and the plaintiff's new husband.
Eric is now six years of age, and will turn seven on February 13, 2002. The child has not seen the intervener for more than three years. During this period of time the paternal grandmother has not written to Eric, and has not sent the child gifts on his birthday or at Christmas.
The defendant, Enoch A. Norton, committed suicide on June 10, 2000. The plaintiff attended Mr. Norton's funeral. On that occasion, the plaintiff asked Ms. Ross if she would like to visit with Eric. Although the parties' versions of that conversation differ, the evidence established that the paternal grandmother declined the plaintiff's offer of visitation at that time, and stated she was not yet ready to see Eric.
Around that time, the intervener questioned whether or not her late son, Enoch, was actually Eric's biological father.
The plaintiff testified credibly at hearing that Ms. Ross also subsequently accused her and her new husband of sexually abusing her children.
At some point during 2000, the paternal grandmother contacted plaintiff and asked to resume visitation with Eric. The plaintiff refused her request. The paternal grandmother then retained her prior attorney, who apparently took no action on the case for a number of months. The plaintiff filed a pro se motion for contempt in June 2001, and subsequently retained her present counsel to pursue visitation.
 FINDINGS AND ORDERS
The intervener has not seen Eric for more than three years, and has not written to him or sent gifts to him during that period.
The relationship between the paternal grandmother, the plaintiff, and the plaintiff's husband is poor. While the court finds that each party must bear responsibility for that unfortunate circumstance, the intervener's accusations against the couple, and her remarks concerning Eric's paternity, certainly contributed to the level of animosity and estrangement that exists between the intervener and the minor child's mother and stepfather. CT Page 16506
The child's natural father is deceased. The father's contacts with the child were sporadic and very limited from the date of dissolution, until the time of his death. The court accepts as credible the plaintiff's claim that the child regards Mr. Lamoureux as a father figure, and does not ask about Mr. Norton.
Based on all of the evidence presented, the court finds that the reintroduction of the intervener to Eric at this time would be potentially confusing and upsetting to the child. It would expose the six year old child to complicated issues pertaining to his paternity, his relationship to his stepfather, his natural father's tragic death and the troubled relationship which exists between his mother and the intervener. Although the court believes that the child will inevitably learn about his natural father, and the natural father's relatives, the decision about how and when to discuss those matters with Eric should be left to the discretion of his mother.
At the hearing the paternal grandmother testified that she would like to resume visitation prior to December 15, 2001, because she would be taking temporary employment in Florida for several months thereafter. Although the intervener subsequently testified that she would be able to return to Connecticut each month for a visit with the child, this evidence, and the fact that Ms. Ross has not seen Eric for so long, also contributed to the court's decision that it would not be appropriate to reintroduce the child to his paternal grandmother at this time.
Based on all of the foregoing, the court finds by a preponderance of the evidence that there has been a material and substantial change in the circumstances of the parties and the minor child since the date of dissolution. The court also finds based on a preponderance of the evidence that it is currently in the best interests of the minor child that the paternal grandmother's visitation be suspended. Accordingly, the plaintiff's motion to modify and suspend the intervener's visitation is hereby GRANTED.
In her motion for a finding of contempt, the intervener alleged that the plaintiff willfully and contemptuously defied the court's order that the paternal grandmother have monthly visitation with Eric.
The court finds that the mother was opposed to the intervener's visitation and did deny access to the paternal grandmother during some of the time referred to in the motion. While the court believes that some of the plaintiff's attitudes about the paternal grandmother are unfortunate and misguided, it finds that the plaintiff's opposition to visitation was also motivated by legitimate concerns for Eric's well-being. Furthermore, the facts established that the intervener must shoulder some CT Page 16507 of the responsibility for the troubled relationship with the child's mother, and for her lack of any contact whatsoever with Eric during the past three years. Accordingly, the court finds that the intervener has not proven by clear and convincing evidence that the plaintiff is in willful contempt of the court's prior visitation orders. Accordingly, her motion for a finding of contempt is hereby DENIED.
SO ORDERED.
Dyer, J.